# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Zagel | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 1169 | **DATE** | 7/23/2003 |
| **CASE TITLE** | NICOR ENERGY vs. GARY W. DILLON | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1)  ☐  Filed motion of [ use listing in "Motion" box above.]

(2)  ☐  Brief in support of motion due _____.

(3)  ☐  Answer brief to motion due_____. Reply to answer brief due_____.

(4)  ☐  Ruling/Hearing on _____ set for _____ at _____.

(5)  ☐  Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6)  ☐  Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7)  ☐  Trial[set for/re-set for] on _____ at _____.

(8)  ☐  [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9)  ☐  This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
     ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■  [Other docket entry]  **Motion to dismiss is granted/denied in part. Enter Memorandum Opinion and Order.**

(11) ■  [For further detail see order attached to the original minute order.]

| ✓ | No notices required, advised in open court. | | Document Number |
|---|---|---|---|
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | JUL 3 0 2003 date docketed | 18 |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| DW | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

NICOR ENERGY,

    Plaintiff,

v.

GARY W. DILLON,

    Defendant.

No. 03 C 1169
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

Nicor Energy has brought a six-count complaint against Defendant Gary W. Dillon for trademark infringement (Count I); unfair competition (Count II); breach of contract (Count III); breach of fiduciary duty (Count IV); violation of the Illinois Trade Secrets Act (Count V); and, unfair competition (Count VI). Dillon now moves to dismiss: (1) portions of Counts II and III concerning the Compensation Agreement formerly between him and Nicor on the ground that the Agreement does not govern his post-employment activities; (2) Count IV on the ground that his conduct did not breach any fiduciary duty owed to Nicor or, alternatively, that any such claim for misappropriation of trade secrets is preempted by the Illinois Trade Secrets Act ("ITSA"); and (3) Count V on the ground that pieces of information about Nicor obtained by Dillon are not trade secrets under ITSA.

Factual Background

In 1986, Dillon founded a company known as Energy Management Company (EMC), an Oklahoma corporation providing electricity and natural gas to customers in Michigan. In March



of 2001, Nicor acquired EMC, continued its operation, and employed Dillon as a Vice President in its Power Development Division of the new EMC Unit. As part of his employment, Dillon executed a Compensation Agreement, stating that he is responsible for "developing and growing a profitable and robust consumer and commercial sales and marketing platform in Michigan for 'Customer Choice' Natural Gas, Electric and Engineering Services." The Agreement specifically replaces all of the terms of his prior employment contract and provides for commission payments to him from contracts he brings into the company. The Agreement contains no language governing post-employment obligations, such as a non-compete clause, and only requires Dillon to comport with Nicor policy and act with integrity while performing his job.

Nicor has alleged a litany of competitive conduct by Dillon and/or his associates shortly before and subsequent to his resignation from Nicor, all of which form the factual basis for this lawsuit. For example, while still employed by Nicor during July and August of 2002, Dillon formed three Michigan corporations: Dillon Energy Consultants, Inc., EMC Gas & Electric Company, and EMC Gas Transmission Company. In September of 2002, Dillon resigned from Nicor and subsequently began to compete against Nicor in Michigan using these corporations. In December of 2002, one of Dillon's associates contacted Shell Energy – an existing Nicor client – regarding the formation of a supplier relationship. During this same time period, Dillon sought a license from the Michigan Public Service Commission and listed five Nicor employees – John Fringer, Jan Rosso, Helen Hawiley, Angela Desjarlais, and Denise McClosky – as employees of his corporation. All of these employees subsequently resigned from Nicor. Prior to resigning, John Fringer sent Dillon an e-mail detailing Nicor's Michigan profit and pricing models and information relating to Nicor's service to a customer named Plastipack. Finally, Dillon also

2

contacted at least one other Nicor customer, Oakland Community College, following his Nicor employment.

Standard of Review

The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits. *Triad Assocs., Inc. v. Chicago Hous. Authority*, 892 F.2d 583, 586 (7th Cir. 1989). A plaintiff fails to state a claim upon which relief may be granted only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle the plaintiff to relief. *Leahy v. Board of Trustees of Community College Dist. No. 508*, 912 F.2d 917, 921 (7th Cir. 1990). In reviewing a motion to dismiss, I must accept as true all of Nicor's well-pleaded factual allegations, and the inferences that can reasonably be drawn from them. The relevant portions of its complaint should be dismissed if it has failed to allege any set of facts upon which relief may be granted, *Yeksigian v. Nappi*, 900 F.2d 101, 102 (7th Cir. 1990), but I need not accept as true legal allegations that the facts do not support, *Evans v. City of Chicago*, No. 01 C 6194, 2001 WL 1654769 (N.D. Ill. Dec. 20, 2001).

Counts II and III: Breach of the Compensation Agreement

When he joined Nicor as an at-will employee, Dillon executed a Compensation Agreement with the company, which outlines the terms and conditions of his compensation and benefits structure, sets forth his duties and responsibilities, and replaces all earlier employment agreements. A fair and reasonable construction of the Agreement is that it governs Dillon's behavior *while he was a Nicor employee*. *United Airlines v. City of Chicago*, 507 N.E.2d 858,

3

861 (Ill. 1987). As a general rule, however, Illinois law allows competition between a departing employee and a *former employer* in the absence of a contractual promise to refrain from such competition. *Composite Marine Propellers, Inc. v. Van der Woude*, 962 F.2d 1263, 1265 (7th Cir. 1992) (quoting *Radiac Abrasives, Inc. v. Diamond Technology, Inc.*, 532 N.E.2d 428, 433 (Ill. App. Ct. 1988)). In this case, the Agreement does not contain a non-compete clause nor any other provision governing Dillon's post-employment responsibilities. As a result, the Agreement does not prevent Dillon from competing against Nicor as a former employee. While the Agreement does provide for commissions to be paid to Dillon even after Nicor no longer employs him for service provided while an employee, that provision is not sufficient to preclude Dillon from competing with Nicor after leaving the company.

If the parties intended to limit Dillon's activities for a period of time following his employment, they could have easily included such a provision in the Agreement. The fact that such a provision does not appear convincingly suggests it was not part of the contract. *Klemp v. Hergott Group, Inc.*, 641 N.E.2d 957, 960 (Ill. App. Ct. 1994). Lending additional support to this conclusion is the fact that Dillon and Nicor signed a separate Confidentiality Agreement governing his post employment activities for one year after his employment with Nicor is over. However, the Confidentiality Agreement is not currently at issue in the motion to dismiss. Accordingly, I dismiss the portions of Counts II and III concerning the Compensation Agreement because its terms are limited to Dillon's employment at Nicor and thus have no relevance to his post-employment activities.

4

Count IV: Breach of Fiduciary Duty

In Count IV, Nicor argues that by establishing corporations with similar names to its EMC Unit while still employed at Nicor and by hiring away Nicor employees, Dillon has breached fiduciary duties to Nicor. Dillon responds that these claims are preempted by the Illinois Trade Secrets Act's ("ITSA"), 765 ILCS 1065/8, and, alternatively, that Nicor cannot make out claims for breach of fiduciary duty. Even if these claims are not preempted by ITSA, Dillon is correct that Nicor cannot establish a breach of any fiduciary duty. To set out a claim for breach of fiduciary duty, a plaintiff must allege facts establishing: (1) the existence of a fiduciary duty on the defendant's part; (2) the defendant's breach of the duty; and (3) damages proximately resulting from the breach. *Romanek v. Connelly*, 753 N.E.2d. 1062, 1072 (Ill. App. Ct. 2001).

Regarding the claim that Dillon breached a fiduciary duty by forming competing companies prior to leaving Nicor, this claim fails because Nicor cannot establish the existence of a fiduciary duty precluding him from doing so. In general, employees may plan, form, and outfit a competing corporation while still working for the employer but may not commence actual competition. *Voss Engineering, Inc. v. Voss Industries, Inc.*, 481 N.E.2d 63, 67 (Ill App. Ct. 1985). Here, Nicor does not allege that Dillon began competing against Nicor while he was still its employee; it merely states that Dillon incorporated three companies. While he ultimately did compete against Nicor, this occurred following his resignation. Therefore, Dillon did not breach a fiduciary duty owed to Nicor by simply incorporating three companies while still an employee.

Regarding the claim that Dillon breached a fiduciary duty by hiring five former Nicor employees, Nicor again cannot establish the existence of a fiduciary duty precluding Dillon from doing so. As a general rule, only a corporate officer can be held liable for the conduct about

5

which Nicor complains. *See Smith-Shrader Co. v. Smith*, 483 N.E.2d 283, 288 (Ill. App. Ct. 1985); *Hagshenas v. Gaylord*, 557 N.E. 2d 316, 324 (Ill. App. Ct. 1990). However, Nicor does not allege that Dillon was an officer. The pleadings simply state that Dillon's title was "Vice President, Power Development of the EMC unit of Nicor Energy." A title alone is not enough to make Dillon an officer; in order to be considered an officer, Dillon must have performed "significant managerial and supervisory responsibilities for the operation of the . . . office," which Nicor has not alleged. *Aon Risk Services, Inc. of Illinois v. Shetzer*, No. 01 C 7813, 2002 WL 1989466 (N.D. Ill. Aug. 27, 2002) (quoting *Everen Securities, Inc. v. A.G. Edwards and Sons, Inc.*, 719 N.E .2d 312, 318 (Ill. App. Ct. 1999)). Accordingly, I dismiss Count IV.

Count V: Illinois Trade Secrets Act

Nicor alleged that Dillon has violated ITSA by illegally obtaining Nicor trade secrets, but Dillon responds that the pieces of information it obtained regarding Nicor do not constitute trade secrets under ITSA. In pleading a trade secrets violation, a plaintiff is not required to disclose the trade secrets in detail. *AutoMed Technologies, Inc. v. Eller*, 160 F. Supp. 2d 915, 920-21 (N.D. Ill. 2001). Therefore, only in the most extreme cases will courts dismiss a trade secret claim for lack of specificity. *Id.* at 921, n.3. ITSA defines a trade secret as follows:

> "Trade secret" means information, including but not limited to, technical or non-technical data, a formula, pattern, compilation, program, device, method, technique, drawing, process, financial data, or list of actual or potential customers or suppliers, that:
> (1) is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; and
> (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality.

6

765 ILCS 1065/2(d). Here, Nicor identifies its customer list, profit and pricing model, and general information concerning its client Plastipack as information that Dillon may have illegally obtained. These items constitute trade secrets. *See, e.g., Applied Industrial Materials Corp. v. Brantjes*, 891 F. Supp. 432, 438 (N.D. Ill. 1994) (noting that formula used to determine a price can be considered a trade secret); *Gillis Associated Industries, Inc. v. Cari-All, Inc.*, 564 N.E.2d 881, 885 (Ill. App. Ct. 1990) (noting that customer lists, if customers are not readily ascertainable, qualify as trade secrets). Accordingly, I will not dismiss Count V. Nicor has pled specific facts, which if proven true, could provide relief under ITSA.

For the reasons above, Dillon's Motion to Dismiss is GRANTED as to the portions of Counts II and III regarding the Compensation Agreement and Count IV but DENIED as to Count V.

ENTER:

James B. Zagel
United States District Judge

DATE: 23 July 2003