# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Zagel | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 1169 | **DATE** | 1/7/2004 |
| **CASE TITLE** | NICOR ENERGY V. GARY W. DILLON | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due ___ .
(3) ☐ Answer brief to motion due___ . Reply to answer brief due___ .
(4) ☐ Ruling/Hearing on ___ set for ___ at ___ .
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on ___ set for ___ at ___ .
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on ___ set for ___ at ___ .
(7) ☐ Trial[set for/re-set for] on ___ at ___ .
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to ___ at ___ .
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
      ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] **Motion (22-1) for partial summary judgment on Counts II and III of the counterclaim is granted. Enter memorandum opinion and order.**

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | **Document Number** |
| | Notices mailed by judge's staff. | | JAN 0 9 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 56 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| DW | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

NICOR ENERGY,

    Plaintiff and Counterdefendant,

v.

GARY W. DILLON,

    Defendant and Counterplaintiff.

No. 03 C 1169
Judge James B. Zagel

DOCKETED
JAN 09 2004

## MEMORANDUM OPINION AND ORDER

In 1986, Defendant and Counterplaintiff Gary W. Dillon founded a company known as Energy Management Company (EMC), an Oklahoma corporation providing electricity and natural gas to customers in Michigan. In March 2001, Plaintiff and Counterdefendant Nicor Energy acquired EMC, continued its operation, and employed Dillon as a Vice President in its Power Development Division of the new EMC Unit. As part of his employment, Dillon executed a Compensation Agreement, stating that he was responsible for "developing and growing a profitable and robust consumer and commercial sales and marketing platform in Michigan for 'Customer Choice' Natural Gas, Electric and Engineering Services." The Agreement specifically replaced all of the terms of his prior employment contract and provided for commission payments to him from contracts he brought into the company.

In September 2002, Dillon resigned. Nicor subsequently sued him, alleging that he and/or his associates engaged in competitive conduct shortly before and subsequent to his resignation. Shortly thereafter, Nicor announced to Dillon that it was "suspending all payments under the Compensation Agreement" because of this activity. Dillon then counterclaimed and moved to dismiss several of Nicor's claims. In July 2003, I granted Dillon's motion to dismiss

Nicor's claim for breach of the Compensation Agreement and for breach of fiduciary duty. I specifically found that the Compensation Agreement's "terms are limited to Dillon's employment at Nicor and thus have no relevance to his post-employment activities."

Dillon now moves for partial summary judgment on Counts II (breach of the Compensation Agreement) and III (violations of the Illinois Sales Representatives Act, 820 ILCS § 120 *et seq.*) of his Counterclaim, which I should grant if there is no genuine issue of material fact, and he is entitled to judgment on the claims as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Although I must draw all inferences in the light most favorable to Nicor and must resolve any doubt against Dillon, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986), Nicor must elucidate specific facts demonstrating there is a genuine issue for trial, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). Rule 56(c) also specifically provides that summary judgment "may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages."

Count II: Breach of Compensation Agreement

Nicor concedes that it breached the Compensation Agreement. Accordingly, I enter partial summary judgment as to liability in favor of Dillon on Count II of Dillon's Counterclaim.

Count III: Violations of Illinois Sales Representatives Act, 820 ILCS § 120 *et seq.*

In Count III, Dillon alleges that Nicor's failure to pay his commission constitutes a violation of the Illinois Sales Representatives Act, 820 ILCS § 120 *et seq.* ("Act"). Nicor argues that Dillon is not entitled to relief under the Act because it does not apply to the relationship between Nicor and him. First, Nicor argues that it is not a "Principal" as defined by the Act because it does not sell tangible goods. The Act defines the term "Principal":

2

> (3) "Principal" means a sole proprietorship, partnership, corporation of other business entity whether or not it has a permanent or fixed place of business in this State and which:
> (A) Manufactures, produces, imports, or distributes a product for sale;
> (B) Contracts with a sales representative to solicit orders for the product; and
> (C) Compensates the sales representative, in whole or in part, by commission.

820 ILCS § 120/1 (3). The term "product" as used in the Act refers "only to purveyors of tangible goods, not services." *English Co. v. Northwest Envirocon, Inc.*, 663 N.E.2d 448, 454 (Ill. App. Ct. 1996); *see also Kenebrew v. Connecticut Gen. Life Ins. Co.*, 882 F.Supp. 749, 754 (N.D. Ill. 1995) (Act inapplicable to commissions allegedly earned by insurance agents in servicing and maintaining policy plans for prepaid health insurance). Nicor argues that the "electrical and natural gas contracts" that Dillon sold on its behalf do not qualify as "products" under the Act. Rather, it argues, these contracts are more akin to the insurance contracts found not to be "products" under the Act in *Kenebrew*.

Nicor is mistaken. First, it is undisputed that part of Nicor's role in providing electrical and natural gas contracts to clients was providing "energy procurement" in addition to its management services. This energy procured was electricity and gas, which are commodities that can be purchased from various producers and sold to end users. Accordingly, at least a portion of the contracts that Dillon sold included agreements to sell specific quantities of natural gas and electricity to end users.[1] In the best case scenario for Nicor, these contracts were a combination of commodities and management services. Therefore, the present case is different from *Kenebrew* because a commodity is clearly a tangible good, as opposed to an insurance policy,

---

[1] I say a "portion" because it appears (at least from Dillon's reply brief) that the contracts may have also included agreements for Nicor's management services. Nonetheless, I assume that the contracts included commodities as well as management services. *Anderson*, 477 U.S. at 255.

3

which is essentially a service to insure against loss.[2] In the end, the "products" here involve both tangible goods and services. Although the Act does not apply to services, it obviously applies to tangible goods. In a mixed product case such as this, I find that the Act's very clear application to tangible goods is sufficient to bring the "products" here within the Act's application. Accordingly, Dillon sold "products" under the Act.

Nicor further argues that Dillon is not a "Sales Representative" under the Act because he did not "solicit orders" for Nicor and because he was an employee of Nicor, rather than an independent contractor hired as a sales representative. *See Kenebrew*, 882 F.Supp. at 753-54. The Act defines the term "Sales Representative":

> (4) "Sales Representative" means a person who contracts with a principal to solicit orders and who is compensated, in whole or in part, by commission, but shall not include one who places orders or purchases for his own account for resale or one who qualifies as an employee of the principal pursuant to the Illinois Wage Payment and Collection Act [IWPCA]."[3]

820 ILCS § 120/1(3). Regarding the charge that Dillon did not "solicit orders" for Nicor, once again, he sold contracts to sell specific quantities of natural gas and electricity to end users and thus did "solicit orders" for tangible goods. Regarding the charge that Dillon was an "employee" of Nicor and thus not a "sales representative," the cardinal rule of statutory construction is to

---

[2] Moreover, a further factor that distinguishes this case from *Kenebrew* is that the "product" at issue in Kenebrew was not the policies themselves, but rather the "service of administering . . . pre-paid [health insurance] plans." 882 F.Supp. at 754. "Plaintiff's customers [were] not paying money to receive a plan of protection (i.e., an insurance policy), they [were] paying to receive claims management services." *Id.* In other words, the "products" in Kenebrew involved two layers of service.

[3] Dillon does not qualify as an "employee of the principal" under the Illinois Wage Payment and Collection Act because that Act is strictly limited to employers and employees in Illinois. 820 ILCS § 115/1.

4

ascertain and give effect to the true meaning and intent of the legislature. *English Co.*, 663 N.E.2d at 452. Where the language is clear, I must give it effect. *Id.* Here, The Act does not limit coverage to all employees; rather, it limits coverage only to those who are employees *pursuant to the IWPCA*. The IWPCA strictly limits its coverage to employers and employees *in Illinois*. 820 ILCS § 115/1. Because there are no facts to support a finding that Dillon was ever "in Illinois" under the IWPCA, he is outside its scope. Therefore, I find that Dillon is a "sales representative" under the Act.

In sum, the Act is applicable here. A (1) sales representative, Dillon, (2) contracted with the principal, Nicor, (3) to solicit orders, and (4) was compensated by commission. The Act provides that commissions due after termination "shall be paid within 13 days of the date on which such commissions become due," and it is undisputed that Nicor stopped paying Dillon's commissions in March 2003, roughly six months after he resigned. By failing to pay Dillon commissions, Nicor has violated the Act, and Dillon is entitled to summary judgment as to Nicor's liability on Count III of his Counterclaim.

Attorneys' Fees and Costs

Dillon further argues that he is entitled to recover attorneys' fees and costs spent to date in this action. Regarding his claim for breach of the Compensation Agreement, the Agreement distinctly provides for recovery of such fees.[4] Dillon is also entitled to recovery of attorneys'

---

[4] The Agreement provides that the "prevailing party to any dispute or legal proceeding arising out of this document shall recover form (sic) the non-prevailing party reasonable attorney fees and costs."

5

fees under Section 3 of the Act.[5] Therefore, Dillon is entitled to an award of the portion of his attorneys' fees and costs accrued in defending against Nicor's claims for breach of the Agreement and in seeking recovery under Counts II and III.

Request for Expedited Hearing on Damages

Along with moving for summary judgment, Dillon requests that I expedite any hearing on damages. This request is premature and the basis for its justification is weak. This lawsuit involves claims by Nicor against Dillon as well as Dillon's claims against Nicor. These claims by Nicor could result in as much as $2 million in damages owed to it by Dillon. Given the fact that several counterclaims remain unresolved, I find an expedited damages phase to be premature. Moreover, Nicor's dissolution is a weak basis for expediting a hearing on damages. There is absolutely nothing improper about this decision to dissolve. Nicor is a Delaware limited liability company formed pursuant to the Delaware Limited Liability Company Act, 6 Del. C. § 18-101, *et seq*. Delaware statutes provide ample guidance for the orderly winding up and dissolution of limited liability companies. As for pending litigation involving such companies,

---

[5] Section 3 provides:
A principal who fails to comply with the provisions of Section 2 concerning timely payment or with any contractual provision concerning timely payment of commissions due upon the termination of the contract with the sales representative, shall be liable in a civil action for exemplary damages in an amount which does not exceed 3 times the amount of the commissions owed to the sales representative. *Additionally, such principal shall pay the sales representative's reasonable attorney's fees and court costs.*
820 ILCS § 120/3 (emphasis added). *See Maher & Associates, Inc. v. Quality Cabinets*, 640 N.E.2d 1000, 1008 (Ill. App. Ct. 1994) (no finding of bad faith required for an award of attorneys' fees and court costs under Section 3). Of course, the enhanced damage portion of the statute requires a factual determination which is not appropriate for summary judgment at this time.

6

the statutes contemplate such situations and protect creditors in Dillon's position as best as they can. For purposes of the present case:

> the persons winding up [a] limited liability company's affairs may, in the name of, and for and on behalf of, the limited liability company, prosecute and defend suits, whether civil, criminal or administrative, gradually settle and close the limited liability company's business, dispose of and convey the limited liability company's property, [and] discharge or make reasonable provision for the limited liability company's liabilities.

6 Del. C. § 18-803(b). Also, during the winding up process, a limited liability company is to satisfy liabilities to creditors or to make reasonable provision for the claims of the creditors. 6 Del. C. § 18-804(a)(1). Finally, the dissolving company must "make such provision as will be reasonably likely to be sufficient to provide compensation for any claim against the limited liability company which is the subject of a pending action, suit or proceeding to which the limited liability company is a party." 6 Del. C. § 18-804(b)(2). Therefore, while Dillon's concerns regarding Nicor being unable to satisfy a damage award in this case are warranted, he is unfortunately in no different position than any of Nicor's other creditors or, for that matter, any other creditor of a dissolving limited liability company. But his position does not warrant a break from the normal course of procedure here. Accordingly, I deny Dillon's request for an expedited damages hearing.

For the reasons above, Dillon's Motion for Partial Summary Judgment on Counts II and III of Dillon's Counterclaim is GRANTED.

ENTER:

_____
James B. Zagel
United States District Judge

DATE: 7 Jan 2004

7